FILED
2021 Sep-16  PM 04:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SANDRA JAFFE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:20-CV-01821-KOB** |
| **BIRMINGHAM** | ) | |
| **GASTROENTEROLOGY ASSOCIATES,** | ) | |
| **P.C.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION</u>**

According to Biblical texts, the Egyptian Pharaohs were some of the worst bosses a worker could imagine. The Pharaohs imposed forced labor, oppressive taskmasters, and the most demanding physical jobs—simply because the workers were Israelites. *See Exodus* 1. In this case, Plaintiff Sandra Jaffe presents allegations likening her employment and firing by Birmingham Gastroenterology Associates to that very narrative. But unlike the Biblical story, Ms. Jaffe's complaint presents few factual allegations showing intentional discrimination. Thus, the court finds that the Plaintiff fails to allege religious discrimination under Title VII of the Civil Rights Act of 1964. The court **GRANTS** Defendant's motion to dismiss this claim **WITHOUT PREJUDICE**.

## I.   <u>Factual and Procedural Background</u>

At the motion to dismiss stage, the court must accept factual matter contained in the complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The following account provides those factual allegations most relevant to Jaffe's religious discrimination claim.

Plaintiff Sandra Jaffe—a Jewish woman—was an employee of Defendant Birmingham Gastroenterology Associates ("BGA") for five years, from 2014 to 2019. (Doc. 1, Compl., ¶14, 32). Around a year into Jaffe's employment, BGA hired Ben Shelton to serve as practice manager and Jaffe's supervisor. (Doc. 1 ¶15). In 2015, one of Jaffe's coworkers filed EEOC charges against Shelton. (Doc. 1 ¶16). Upon learning of this charge, Jaffe reported to Dr. Philpott—a doctor at BGA—that Shelton had engaged in other conduct consistent with her coworker's EEOC allegations. (Doc. 1 ¶19). When Shelton later learned that Jaffe had reported him, he grew increasingly hostile to Jaffe and tried to have her terminated in 2017, but Dr. Philpott prevented Jaffe's termination at that time. (Doc. 1 ¶ 22–25). Dr. Philpott retired in April 2019, and Shelton fired Jaffe less than a month later. (Doc. 1 ¶31–32).

Jaffe avers that, just before Dr. Philpott retired, he stated: "You know the story in the Bible where the Pharaohs are smiting the Israelites and they are bad people. Well that is happening now with the new administration at BGA. Tell Dr. Cochran." (Doc. 1 ¶46). Dr. Philpott made this statement three weeks before Shelton fired Jaffe. (Doc. 9 at 8). Jaffe also alleges that, after her firing, Shelton offered shifting reasons for his decision. Shelton told Jaffe and other employees that she was fired because BGA was restructuring; he told another physician that her firing was a "cost issue"; and his response to Jaffe's EEOC charge states that her firing was because of "weak job performance." (Doc. 1 ¶34–36). But according to Jaffe, BGA repeatedly told her she was doing a great job. (Doc. 1 ¶37–38). After Jaffe's firing, BGA promoted four people and made two new hires to fill Jaffe's job duties. (Doc. 1 ¶45). Jaffe makes no allegations about her replacements' religious adherence.

After her firing, Jaffe timely filed an EEOC charge for discrimination based on her age, sex, and religion, and retaliatory firing for her participation in her coworker's EEOC

proceedings. (Doc. 1-1). After receiving a right-to-sue letter, she filed this case, alleging age

discrimination under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §

621 *et seq.* and religious discrimination, sex discrimination in the form of a hostile work

environment, and retaliation, all under Title VII. (Doc. 1). As to the religious discrimination

count only, BGA has now filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). (Doc. 7).

## II.   <u>Legal Standard</u>

A defendant may move to dismiss when the plaintiff fails to state a claim as a matter of

law. Fed. R. Civ. P. 12(b)(6). The nonmoving party survives a motion to dismiss if the complaint

states sufficient factual matter, accepted as true, to plausibly state a claim for relief. *See Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). The court accepts factual allegations as true, but the facts must state a claim rising

"above the speculative level." *Twombly*, 550 U.S. at 555. The court is not required to accept

mere recitation of the elements of a claim or conclusory statements. *Iqbal*, 556 U.S. at 678.

## III.   <u>Analysis</u>

As an initial matter, the court must apply the familiar standard for assessing motions to

dismiss in the context of employment discrimination claims. Perhaps the most widely known

method for proving discrimination under Title VII involves the *McDonnell Douglas* burden

shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). But although

the *McDonnell Douglas* framework sets the burden of proof for *summary judgment*, it does not

dictate the plaintiff's burden at the *motion to dismiss* stage because that framework is an

evidentiary standard, not a pleading requirement. *See Swierkiewicz v. Sorema N.A.*, 534 U.S.

506, 510 (2002). The Supreme Court has been quite clear on this point: "This Court has never

indicated that the requirements for establishing a prima facie case under *McDonnell Douglas*

also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Swierkiewicz*, 534 U.S. at 511. Rather, as the Eleventh Circuit later elaborated, "[t]o state a [discrimination] claim under Title VII, a complaint need only 'provide enough factual matter (taken as true) to suggest intentional . . . discrimination.'" *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1246 (11th Cir. 2015) (quoting *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008)). Consistent with *Twombly* and *Iqbal*, the focus at the motion to dismiss stage is whether the complaint "plausibly suggest[s]" intentional discrimination. *Surtain*, 789 F.3d at 1246.

Even so, the traditional methods of proving Title VII claims remain relevant, as "helpful guide[s] to the determination of the issue." *Powell v. Harsco Metal*, No. 2:12-cv-4080, 2013 WL 3242759, at *5 (N.D. Ala. June 20, 2013) (relying on the *McDonnell Douglas* framework to assess motion to dismiss Title VII claim). The Eleventh Circuit has recognized three such methods of proof: direct evidence of discrimination, the *McDonnell Douglas* framework, and a "convincing mosaic" of circumstantial evidence. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Here, Jaffe claims that her pleadings plausibly allege a claim under the second and third methods of proof. The court now addresses these claims, mindful that the key question is whether the "factual allegations of a complaint plausibly suggest . . . intentional discrimination," rather than whether Jaffe has met every element of her final burden of proof at this early stage. *See Surtain*, 789 F.3d at 1246.

### a.  *The McDonnell Douglas Framework*

BGA moves to dismiss Jaffe's religious discrimination claim in part because she does not allege a similarly situated comparator outside her class, in accordance with the *McDonnell Douglas* framework. (Doc. 10 at 1–2). Generally, the *McDonnell Douglas* framework requires

4

the plaintiff to establish a *prima facie* case showing (1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) either replacement by or less favorable treatment than a similarly situated individual outside the plaintiff's protected class. *See McDonnell Douglas*, 411 U.S. at 802; *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1226 (11th Cir. 2019).

As to the fourth element of the *McDonnell Douglas* case, the Eleventh Circuit has stated that alleging a comparator is the key to a finding of discrimination because it shows whether the employer has "treat[ed] *like* cases differently." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1222 (11th Cir. 2019). The comparison is only effective, of course, when the plaintiff's comparator is outside the plaintiff's protected class. *Lewis*, 918 F.3d at 1227. And even though the plaintiff is not required to allege a *prima facie* case at the motion to dismiss stage, alleging a comparator outside the plaintiff's class is a common thread among those discrimination claims that survive a motion to dismiss. *See, e.g.*, *Swierkiewicz*, 534 U.S at 514 (denying motion to dismiss where plaintiff pled a comparator outside his protected class); *McCurdy v. State of Ala. Disability Determination Serv.*, No. 2:13-cv-934, 2015 WL 5737103 at *13 (N.D. Ala. Sept. 30, 2015) (same); *Groce v. Franklin Cnty. Comm'n*, No. 3:13-cv-01769, 2014 WL 3543700 at *3 (N.D. Ala. July 17, 2014) (same); *Powell v. Harsco Metal*, No. 2:12-cv-4080, 2013 WL 3242759 at *6 (N.D. Ala. June 20, 2013) (same).

Here, the parties do not dispute that Jaffe is a member of a protected class, as she is Jewish, that she was fired, and that she was qualified for her job. But Jaffe has failed to allege a comparator outside her protected class. Jaffe's complaint is silent as to the religious adherence of any of the six people that replaced her, and her brief offers no further clarity: "[t]here is no allegation in the Complaint that any of [Jaffe's replacements] are Jewish." (Doc. 9 at 8). As Jaffe

states a religious discrimination claim, it is imperative that her comparators be non-Jewish. *See, e.g.*, *Lindsey*, 369 F. Supp. 3d at 1211. Of course, failure to allege a comparator does not *mandate* dismissal at this stage, where plausibility is the focus.  But Jaffe's failure to allege a comparator both sets her claim apart from those that typically survive motions to dismiss and makes it difficult for the court to discern whether BGA was "treating *like* cases differently." *Lewis*, 918 F.3d at 1222. Add to this that Jaffe fails to allege the religion of *anyone* else in her complaint—her coworkers, Dr. Philpott, Ben Shelton, or other BGA administration members— and the court has little basis on which to find plausible religious discrimination.

To bolster her *McDonnell Douglas* argument, Jaffe argues that BGA's purported firing reasons are pretextual. The court notes that, while the pretext analysis is an essential component of the *McDonnell Douglas* framework at the summary judgment stage, that analysis is perhaps more out of place than the *prima facie* case at the motion to dismiss stage. After all, the purported firing justifications that Jaffe rebuts are ones that she herself set forth in her pleadings; the court has yet to hear from BGA on the matter. Even so, the court finds that Jaffe plausibly rebuts two of the offered reasons at this early stage. Jaffe refutes the poor job performance reason with her allegation of repeated praise from the BGA administration. And she plausibly refutes the "cost issue" reason with an allegation that six replacement employees likely cost more than keeping her on board. But she fails to address the restructuring justification at this point. Finally, Jaffe points to the shifting nature of BGA's proposed reasons for the firing, but the court finds that this fact does not altogether discredit BGA's justifications. *See Herron-Williams v. Ala. State Univ.*, 805 F. App'x 622, 630 (11th Cir. 2020) (permitting "shifting" and "conflicting" purported firing reasons at the summary judgment stage).

But the Plaintiff's pretext arguments are of little value at this stage. Rather, the facts that Jaffe alleges show only that (1) she is Jewish, (2) she was fired for a job she was qualified to do, and (3) she was replaced by six others whose religious adherence is unknown.  Even though Jaffe has cast some doubt on BGA's supposed firing justifications, she provides few affirmative facts showing an intent to discriminate. Without allegations as to the religion of Jaffe's replacements, the BGA administration, Shelton, or other mistreated Jewish coworkers, the court struggles to find plausible intentional discrimination under the *McDonnell Douglas* framework.

### b.   *The "Convincing Mosaic" of Circumstantial Evidence*

Jaffe argues that, even if her pleadings do not check every box of the *McDonnell Douglas* framework, they nonetheless constitute a "convincing mosaic of circumstantial evidence" showing intentional discrimination. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). A plaintiff may meet this standard by showing, "among other things, (1) 'suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quoting *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011)). Such evidence must lead to the "unavoidable inference" of intentional discrimination. *Smith*, 644 F.3d at 1346.

The "convincing mosaic" method of proof can be a fallback for plaintiffs who fail to allege a similarly situated comparator under *McDonnell Douglas*. But to fill that gap, plaintiffs must provide much circumstantial evidence. Consider the cases that Jaffe relies on, which all occurred at the summary judgment stage. In *Smith*, the Eleventh Circuit found a convincing mosaic when Lockheed-Martin punished white employees more severely than black employees

for sending racist emails. *Smith*, 644 F.3d at 1341. Recent violent and highly publicized scandals of racist acts by employees incentivized Lockheed to aggressively discipline white employees. And Lockheed openly relied on a race-categorized employee spreadsheet when deciding punishments. *Smith*, 644 F.3d at 1336. That scenario presented a convincing mosaic.

In *Lewis*, the defendant fired the plaintiff for violating a company policy that she did not actually violate and of which she was not warned. 934 F.3d at 1186. Although she did not offer a "similarly situated comparator," the *Lewis* plaintiff offered several fellow workers outside her protected class that were treated more favorably than her in numerous respects. These facts showed a convincing mosaic.

And although the court in *Rioux v. City of Atlanta, Ga.* ultimately granted the city-employers qualified immunity, the court found that the white plaintiff had shown racial discrimination at the summary judgment stage because he was fired under pressure from the department's black leadership as part of a "race balancing" effort. 520 F.3d 1269, 1277 (11th Cir. 2008). The *Rioux* plaintiff also presented a more favorably treated comparator, although not "similarly situated." *Rioux*, 520 F.3d at 1277.

These cases present a contrast to *Blancher*, where a single email discussing the plaintiff's race sent by someone other than the person who fired the plaintiff did not create a convincing mosaic against the employer's unrefuted justification for the firing. *Blancher v. City of Birmingham*, No. 2:19-cv-997, 2021 WL 2188199 at *12 (N.D. Ala. May 28, 2021) (slip copy).

Here, Jaffe's allegations do not state a convincing mosaic of discrimination. The complaint does not allege that Shelton or the administration made explicit religion-based comments or had religion-based policies. Rather, Jaffe relies heavily on Dr. Philpott's "Pharaohs" comment, made three weeks before Jaffe's firing. But ambiguity plagues the

Pharaohs statement. For starters, it is a simile, which is inherently difficult to interpret because it "symbolically represent[s] or suggest[s] something else." *Simile*, *The Oxford Eng. Dictionary* (3d ed. 2019). And its application is far from clear here. For example, Dr. Philpott states that the BGA administration is "smiting" employees just as the pharaohs did, but does that statement specifically describe BGA's firing decisions and its treatment of Jaffe? Unclear. Also, Dr. Philpott spoke in the plural ("Israelites"), which appears to imply that BGA mistreated other Jewish employees also. But Jaffe does not mention other mistreated Jewish employees. *See Ostrow v. GlobeCast Am. Inc.*, 489 F. App'x 433, 438 (11th Cir. 2012) (affirming summary judgment against plaintiff who failed to allege a "pattern of firing" other employees in the plaintiff's class). Then the issue of timing arises: did Dr. Philpott suspect that the administration would engage in adverse action against Jaffe soon? Neither Jaffe's complaint nor Philpott's statement say so, and if not, his comment sheds little light on BGA's motivations for a firing decision three weeks later. The temporal relevance of the Pharaohs comment is especially dubious, given that the original friction between Shelton and Jaffe preexisted the Pharaohs comment by almost two years.

The Pharaohs statement is also unhelpful because it does not indicate that the administration fired Jaffe *because of* her religion. Jaffe's burden is to plausibly show that "unlawful discriminatory animus motivated the decision." *Alvarez*, 610 F.3d at 1266. Even if Dr. Philpott predicted that the administration would be "smiting" a Jewish employee, he does not explain *why*. Perhaps he could not. Even granting that Dr. Philpott previously intervened to prevent Jaffe's firing, the pleadings do not indicate that Dr. Philpott had any reason to know how or why BGA's firing decisions were made. Unlike Shelton, Philpott was not part of the administration. In *Rioux* and *Smith*, by contrast, the firing decisionmakers themselves openly

stated that they were guided by race-based policies. But Dr. Philpott's statement is little more than a stray remark made by someone out of the loop as to firing decisions. *See Alvarez*, 610 F.3d at 1268 (rejecting evidence of "single stray remark 'Cubans are dumb,' which was not made by one of the ultimate decision makers"); *Blancher*, No. 2:19-cv-997, 2021 WL 2188199 at *12 (rejecting evidence of email showing discrimination by non-decisionmaker). Taken together, the ambiguities of the Pharaohs statement and Dr. Philpott's apparent lack of knowledge of firing decisions mean that the statement does not move the needle toward plausible religious discrimination.

Finally, Jaffe's complaint lacks other facts to show a convincing mosaic of discrimination like the cases she relied on. For example, the plaintiffs in *Lewis*, *Smith*, and *Rioux* all offered comparators (albeit not "similarly situated") outside their protected classes that were treated more favorably. Again, no dice here. Jaffe's silence about her coworkers' religion also prevents the court from identifying a "pattern of firing" similar Jewish workers. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). Finally, *Lewis*, *Smith*, and *Rioux* contained myriad other facts showing intentional discrimination—an "extraordinarily arbitrary" firing in *Lewis*, an explicitly race-based hiring quota in *Rioux*, and a years-long backdrop of racial violence and media firestorms in *Smith*. None of that is present here. Even given the Pharaohs comment, the court finds that Jaffe simply needs "more tiles in this mosaic" for it to be convincing. *Lewis*, 934 F.3d at 1188.

## IV.   <u>Conclusion</u>

Jaffe's allegations meet neither the *McDonnell Douglas* framework nor the "convincing mosaic" methods of proof. And although the plaintiff does not bear the burden of proof at the motion to dismiss stage, these methods provide guidance as to what allegations plausibly show

intentional discrimination. Because Jaffe's complaint fails to plausibly allege religious discrimination under either method, the court **GRANTS** Defendant BGA's Motion to Partially Dismiss. (Doc. 7). Plaintiff's claim for religious discrimination (Count II) is **DISMISSED WITHOUT PREJUDICE**. Should the Plaintiff wish to amend, she may do so by October 8, 2021.

**DONE** and **ORDERED** this 16th day of September, 2021.

**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE